**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Tiffany Roberts,                               )   No.  CV-19-01232-PHX-SPL
                                               )
            Plaintiff,                         )
                                               )   **ORDER**
vs.                                            )
                                               )
Garrison Property Casualty and                )
Insurance Company,                            )
                                               )
            Defendant.                         )
_____       )

## I.    BACKGROUND

Plaintiff Tiffany Roberts is an insured of Defendant Garrison Property Casualty and Insurance Company. (Doc. 59 at 5). Plaintiff alleges Defendant "promises worldwide coverage for personal property up to the applicable amount of insurance listed on the declarations page, except for property usually located at a residence other than the one listed on the declarations page," and that for those "other" residences, "the limit of liability is 10% of the amount of insurance available for the principal residence." (Doc. 59 at 4). Plaintiff alleges, however, that Defendant "applies the 10% cap to any personal property located outside the primary home at the time of the loss, even if there is no other residence or it is not usually located at a secondary residence." (Doc. 59 at 4). Plaintiff brought breach of contract and bad faith claims and also sought declaratory and injunctive relief and punitive damages. (Doc. 1).

On May 14, 2021, Defendant filed a Motion to Preclude Opinions and Statements of Plaintiff's Claims Handling Expert (Doc. 112). The Motion seeks to preclude the opinion

of Plaintiff's claims handling expert, Daniel G. Fink. Defendant seeks to preclude five specific portions of Mr. Fink's expert report: (1) opinions, statements, and references to applicable law; (2) opinions and statements about policy interpretation; (3) opinions that Garrison acted in bad faith; (4) opinions regarding Garrison's alleged motive, intent, or state of mind; and (5) mention of the Arizona Unfair Claims Settlement Practices Act, A.R.S § 20-461, and the Unfair Claims Settlement Practices Regulation, R20-6-801. (Doc. 112 at 2–3). The Motion also objects to the expert opinion as not including items that Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B) requires an expert report to contain, including Mr. Fink's compensation, a list of his publications, and a list of cases in which he has testified. (Doc. 112 at 2).

However, on July 20, 2021, this Court granted summary judgment in favor of Defendant on Plaintiff's bad faith claim along with her request for a declaratory judgment and request for punitive damages, leaving only Plaintiff's breach of contract claim and request for injunctive relief for trial. (Doc. 148). The Court further ordered the parties to file a joint notice, now before the Court (Doc. 150), indicating whether the pending Motion to Preclude had been mooted by the summary judgment ruling.

In the Joint Notice, Defendant argues that "[t]he Court granting [Defendant] summary judgment on the bad faith claim renders moot" the Motion to Preclude. (Doc. 150 at 4). But Defendant does not actually provide any argument on the mootness issue. Instead, in light of the summary judgment ruling, Defendant provides additional arguments in favor of its Motion to Preclude (Doc. 150 at 4–5), each of which Plaintiff discusses in the Joint Notice (Doc. 150 at 3–4). Because Defendant provides no argument on the mootness issue, the Court will address the Motion to Preclude on the merits with consideration for the arguments made in the Joint Notice.[1]

///

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998).

2

## II.   LEGAL STANDARD

When either party attempts to offer expert testimony through an expert witness, the Court "must determine whether the expert witness is qualified and has specialized knowledge that will 'assist a trier of fact to understand the evidence or to determine a fact in issue.'" *McKendall v. Crown Control Corp*., 122 F.3d 803, 805 (9th Cir. 1997) (quoting Fed. R. Evid. 702) (citing *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 591 (1993) ("*Daubert I*"))*, overruled on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169 n.7 (9th Cir. 2000). The Court's analysis is done by comparing the proposed expert testimony to the requirements of Federal Rule of Evidence ("FRE") 702. FRE 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The United States Supreme Court and the Ninth Circuit Court of Appeals have issued opinions interpreting FRE 702 that help guide this Court's analysis. *See Daubert I*; *see also Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*"). According to *Daubert I*, the Court has broad discretionary powers in determining whether a proposed expert is qualified under FRE 702 by "knowledge, skill, experience, training, or education." *Daubert I* at 591; *see also Daubert II* at 1315. The Court must also decide whether the proposed subject matter of the expert opinion correctly concerns "scientific, technical, or other specialized knowledge" under FRE 702. *McKendall*, 122

1    F.3d at 806 (citing *Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 476 (1st Cir.

2    1997); Fed. R. Evid. 702). Finally, the Court must ascertain "whether the testimony is

3    helpful to the trier of fact, *i.e.*, whether it rests on a reliable foundation and is relevant to

4    the facts of the case." *Id.* (quoting *Bogosian*, 104 F.3d at 476).

5         The Supreme Court charged district courts with acting as "gatekeepers" to ensure

6    that all scientific testimony and evidence admitted is both relevant and reliable. *Hall v.*

7    *Baxter Healthcare Corp*., 947 F. Supp. 1387, 1396 (D. Or. 1996). Thus, the task before

8    this Court is two-pronged. First, the Court must ensure that the proposed testimony

9    exemplifies "scientific knowledge," constitutes "good science," and was "derived by the

10   scientific method." *Id.* (citing *Daubert II*, 43 F.3d at 1316). Second, the Court must ensure

11   that the testimony is "relevant to the task at hand" in that it "logically advances a material

12   aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315 (quoting *Daubert I*, 509

13   U.S. at 597).

14   **III.    ANALYSIS**

15        **a.   FRCP 26(a)(2)**

16        Garrison first seeks to preclude Mr. Fink's report entirely for failing to comply with

17   the requirements of FRCP 26(a)(2)(B). FRCP 26 provides that the disclosure of a witness

18   that may be used at trial must be accompanied by a written report, prepared and signed by

19   the witness, containing:

20           (i) a complete statement of all opinions the witness will
             express and the basis and reasons for them;

21           (ii) the facts or data considered by the witness in forming them;

22           (iii) any exhibits that will be used to summarize or support
23           them;

24           (iv) the witness's qualifications, including a list of all
             publications authored in the previous 10 years;

25           (v) a list of all other cases in which, during the previous 4 years,
26           the witness testified as an expert at trial or by deposition; and

27           (vi) a statement of the compensation to be paid for the study
             and testimony in the case.

28

Fed. R. Civ. P. 26(a)(2)(B). Garrison argues Mr. Fink's report did not contain the last three requirements.

FRCP 37(c)(1) specifies the consequences for violating FRCP 26(a). It provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, *unless* the failure was substantially justified or is harmless." (emphasis added). To determine whether a violation is harmless, courts consider the following factors: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption at trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1270 (D. Ariz. 2020).

At the outset, the Court agrees with Plaintiff that Mr. Fink's report does in fact include his qualifications, including publications. (Doc. 112-1 at 1–2). The only requirements missing from the report are the prior cases in which Mr. Fink has testified and a statement of his compensation.

The first and second factors weigh against precluding Mr. Fink's testimony. The prejudice and harm to Plaintiff is minimal because the opinion merely omitted Mr. Fink's compensation and prior testimony, but the substance of his opinions and the basis for them was contained in the report. *See, e.g.*, *Burk v. State Farm Fire & Cas. Ins. Co*., No. CV-14-02642-PHX-SMM, 2017 WL 4676588, at *3 (D. Ariz. Mar. 27, 2017) (excluding expert testimony because the expert's report "fails to provide (1) the basis and reasons for his opinions; (2) the facts and data considered in forming his opinions; and (3) a sufficient amount of detail as to his qualifications"). Further, the missing information has since been provided to Plaintiffs and Garrison did not depose Mr. Fink (Doc. 126 at 14–15), so Plaintiff was not deprived of the opportunity to ask him about the missing information prior to his questioning. Plaintiff has been minimally prejudiced.

The third and fourth factors also weigh against precluding the testimony because Plaintiff has since been provided the missing information. (Doc. 126-1). Trial has not yet

been scheduled for this case, so there is no likelihood of disruption at trial. *See, e.g.*, *Montgomery v. Wal-Mart Stores, Inc.*, No. 12CV3057-AJB (DHB), 2015 WL 11233382, at *2 (S.D. Cal. Sept. 24, 2015) (rejecting motion to exclude expert testimony in part because the defendant "has had ample time to conduct any necessary discovery in response to [the expert's] designation and report, and there is no disruption of trial which has not even been scheduled yet"). Further, Plaintiff has not made a showing, nor can the Court conclude based on the record, that the failure to include Mr. Fink's prior testimony or compensation was in bad faith—particularly considering they have since disclosed that information.

In sum, Garrison's violation of FRCP 26 is harmless, so the Court will not exclude his testimony on this basis.

**b. Bad Faith**

In the Motion to Preclude, Defendant argues that Mr. Fink's opinions that Defendant acted in bad faith should be excluded because they go to the ultimate issue of law and invade the province of the jury. (Doc. 112 at 8–10). Plaintiff responds that Mr. Fink will only testify to Defendant's "actions that, in his opinion, show bad faith because the[y] deviate from industry standards." (Doc. 126 at 9). In the Joint Notice, Defendant additionally argues that admission of Mr. Fink's opinions related to bad faith would be an "end run" around the Court's July 20, 2021 Order granting summary judgment to Defendant on Plaintiff's bad faith claim. (Doc. 150 at 5). Plaintiff argues that this testimony should be allowed despite the Court's summary judgment ruling because there is a triable question of fact as to whether Defendant materially breached the parties' contract by misapplying the 10% cap, and conformance with standards of good faith and fair dealing is a factor relevant to materiality. (Doc. 150 at 2).

The Court agrees that standards of good faith and fair dealing are relevant to the issue of materiality under Arizona law. *See* Rev. Ariz. Jury Instr. (Civil) (Contract 9) (7th ed. 2020) (citing Restatement (Second) of Contracts § 241 (1981)). But the Court has already concluded, as a matter of law, that Defendant "did not act in bad faith when

misapplying the 10% cap." (Doc. 148 at 8). The Court held that "Plaintiff fail[ed] to set forth facts indicating that Defendant acted without reasonable or fairly debatable grounds because it relied on the advice of counsel."[2] (Doc. 148 at 9). Accordingly, the Court will not entertain further arguments as to whether Defendant acted in good or bad faith. Mr. Fink is precluded from opining on the issue of bad faith as it is not "relevant to the task at hand" and does not "logically advance[ ] a material aspect of [Plaintiff's] case." *Daubert II*, 43 F.3d at 1315 (quoting *Daubert I*, 509 U.S. at 597).

The issue of materiality remains triable, however, as "[a]dherence to the standards [of good faith and fair dealing] . . . is not conclusive, since other circumstances may cause a failure [to perform] to be material in spite of such adherence." Restatement (Second) of Contracts § 241 cmt. f (1981). Plaintiff states in the Joint Notice that she also intends to proffer Mr. Fink's expert testimony on industry standards regarding "the reasonableness of Plaintiff's expectations" and "the reasonableness of Defendant's assurances," both of which are factors relevant to materiality. (Doc. 150 at 2). Though Mr. Fink's report is clearly centered on the bad faith issue and the vast majority of it is precluded on that basis, the Court will address the additional arguments raised in Defendant's Motion to Preclude insofar as they may relate to the reasonableness factors.

### c.  Applicable Law/Duty

Defendant seeks to preclude Mr. Fink from instructing the jury on duty and applicable law. (Doc. 112 at 4). "It is well-established . . . that expert testimony concerning an ultimate issue is not per se improper." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766, 770 (9th Cir. 2020). Indeed, FRE 704(a) provides that expert testimony that is "otherwise admissible is not objectionable because it embraces an

---

[2] It bears noting that portions of Mr. Fink's report consist of conclusory legal assertions that directly contravene the Court's findings in the July 20, 2021 Order. For example, Mr. Fink asserts that "there was no reasonable basis" for Defendant's delay in paying Plaintiff's claim (Doc. 112-1 at 19), contradicting Court's the summary judgment ruling.

7

ultimate issue to be decided by the trier of fact." That said, the Ninth Circuit has held that "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Id.* Similarly, "instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998, 1016 (9th Cir. 2004) (citation and quotation marks omitted). Moreover, "courts have prohibited expert opinion that applies the law to the facts, as this usurps the role of the jury." *McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1292–93 (D. Haw. 2007) (citing *Marx & Co. v. Diners' Club, Inc*., 550 F.2d 505, 508–11 (2d Cir. 1977)); *see also Montoya Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1105 (D. Ariz. 2003) (excluding an expert opinion consisting "primarily of legal conclusions as to the reasonableness of [an insurer's] actions, which are not proper matters for an expert opinion").

There are several portions of Mr. Fink's report that impermissibly seek to instruct the jury on applicable law and apply law to fact, though most go to the bad faith issue and are excluded on that basis. For example, his opinion states that "an insurer's reasonable reliance on an expert opinion insulates the insurer from bad faith liability" and makes the conclusory assertion that "Garrison's decisions were not reasonable." (Doc. 112-1 at 20). Similarly, Mr. Fink's report lists the bases on which punitive damages may be awarded— another issue on which the Court granted summary judgment in favor of Defendant in its July 20, 2021 Order and to which Mr. Fink thus may not testify—and improperly and incorrectly concludes that Defendant "committed all these offenses which warrant punitive damages." (Doc. 112-1 at 20).  Such portions not only intrude on the court's role by instructing the jury on the law, but also intrude on the jury's role by applying the law to the facts of the case. Mr. Fink may testify to industry standards that relate to Plaintiff's reasonable expectations and Defendant's reasonable assurances, but he may not testify to legal standards or their application.

### d.  Policy Interpretation

The Ninth Circuit has held that "[a]lthough experts may disagree in their conclusions, their testimony cannot be used to provide legal meaning or interpret the

[insurance] policies as written." *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999); *see also Santan Crossing Pro. Plaza Condo. Ass'n v. Westfield Ins. Co.*, No. CV-20-00792-PHX-SPL, 2020 WL 7042841, at *2 (D. Ariz. Oct. 30, 2020) ("Whether a claim is within an insurance company's policy coverage is a question of law for the court."). As such, Defendant argues that Mr. Fink's opinions related to the scope of Plaintiff's insurance policy, particularly whether the 10% limit on personal property applies to Plaintiff's insurance claim, should be excluded. (Doc. 112 at 7). Plaintiff argues that the report does not provide opinions on the scope of coverage given that Defendant admits that the 10% limit was incorrectly applied to Plaintiff's claim. Instead, Plaintiff argues, Mr. Fink "opines that because . . . the ten percent limit did not apply, as [Defendant] initially claimed, evidence of the insurer's claims handling and actions support a finding of bad faith." (Doc. 126 at 8).

As discussed, the Court will preclude Mr. Fink from opining on the bad faith issue because of the Court's summary judgment ruling. Plaintiff makes no argument that the portions of Mr. Fink's opinion that Defendant seeks to have precluded as improper policy interpretations go to any issue other than bad faith. And on the Court's own review of the report, the Court finds no opinions on the scope of coverage that relate to Plaintiff's reasonable expectations or Defendant's reasonable assurances, the remaining issues to which Plaintiff seeks to have Mr. Fink testify. To the extent Mr. Fink must testify to the undisputed assertion that the 10% limit was improperly applied to Plaintiff's insurance claim in order to contextualize any admissible opinions he provides on the reasonableness issues, he may do so, as such testimony does not "provide legal meaning or interpret the polic[y] as written." *McHugh*, 164 F.3d at 454. But Mr. Fink may not discuss or interpret the scope of the policy in order to argue bad faith.

### e.  Intent, Motive, or State of Mind

Defendant next argues that Mr. Fink's report contains various statements that improperly "state or imply [Defendant's] alleged intent, motive, goals, or state of mind." (Doc. 112 at 11). Plaintiff counters that the statements Defendant seeks to preclude go not

to state of mind but rather to Defendant's conduct and that Plaintiff will not elicit state-of-mind testimony from Mr. Fink at trial. (Doc. 126 at 10–12).

The Court notes at the outset that few, if any, of Mr. Fink's statements that Defendant seeks to preclude on this basis survive the exclusion of opinions related to bad faith. Most of the statements Defendant cites are conclusory assertions that Defendant tried to "deceive" or "defraud" Plaintiff by initially applying the 10% cap, along with other similar allegations. (Doc. 112 at 11–12). But the Court has already held as a matter of law that "Plaintiff fail[ed] to set forth facts indicating that Defendant acted without reasonable or fairly debatable grounds" and thus, Defendant did not act in bad faith. (Doc. 148 at 9). As stated, Mr. Fink will not be permitted to testify otherwise.

To the extent that portions of Mr. Fink's report survive, this Court has held that testimony by a claims handling expert as to an insurance company's "intent, motive, or state of mind" lacks the requisite helpfulness for expert testimony because "[t]he jury is sufficiently capable of drawing its own inferences" on those topics. *Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL 1182550, at *2 (D. Ariz. Mar. 7, 2018) (quoting *Siring v. Or. State Bd. Of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)). In *Hunton*, the court held that that the plaintiff could present expert testimony regarding pervasive claims handling failures but that it was for the jury to draw any inferences from those failures regarding the defendant's mental state. *Id.* Likewise, here, Mr. Fink may testify about Defendant's actions in relation to applicable industry standards, but he may not state conclusions about Defendant's motives or mindset in pursuing that course of conduct.

### f. Arizona Unfair Claims Settlement Practices Act and Unfair Claims Settlement Practices Regulation

Finally, Defendant seeks to preclude Mr. Fink from referring to the Arizona Unfair Claims Settlement Practices Act, A.R.S. § 20-461 (the "Act") and the Arizona Unfair Claims Settlement Practices Regulation, R20-6-801 (the "Regulation"), arguing that such testimony is inadmissible under the terms of the Act. (Doc. 112 at 12). Defendant correctly

notes that the Act expressly prohibits a private right of action based on a violation of the Act or Regulation and cites case law that emphasizes that point. *See Melancon v. USAA Cas. Ins. Co.*, 174 Ariz. 344, 347, 849 P.2d 1374, 1377 (Ct. App. 1992) (finding a jury instruction that gave the impression that a violation of the Regulation entitled plaintiffs to relief was improper); *Am. United Life Ins. Co. v. Broatch*, No. CV-13-00956-PHX-DLR, 2014 WL 11514479, at *7 (D. Ariz. Aug. 29, 2014) (finding plaintiff's allegation that defendant insurance company failed to abide by time guidelines in the Regulation was insufficient to establish a claim for bad faith).

But Plaintiff does not argue that she is entitled to relief based on a violation of the Act or Regulation, nor does Mr. Fink's report suggest as much. Rather, Mr. Fink properly refers to various provisions of the Act and Regulation as industry guidelines for handling insurance claims. (Doc. 112-1 at 19–20). It is well established in the Ninth Circuit that a claims handling expert may testify to applicable industry standards. *See, e.g.*, *King v. GEICO Indem. Co.*, 712 Fed. Appx. 649, 651 (9th Cir. 2017) ("Although it is well established that experts may not give opinions as to legal conclusions, experts may testify about industry standards, and the reasonableness of an insurer's claims handling is generally an issue of fact."); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (holding that the district court did not err by allowing an expert to testify about industry standards even though the testimony referred to California's Unfair Settlement Claims Practices Act). And as this Court has previously found, "[t]he standards of conduct for insurers and adjusters in Arizona follow the National Association of Insurance Commissioners ('NAIC') model rules, which were adopted in the Arizona Unfair Claims Settlement Practices Act." *Temple v. Hartford Ins. Co. of the Midwest*, 40 F. Supp. 3d 1156, 1161 (D. Ariz. 2014). Mr. Fink may therefore "refer to" the Act and Regulation "to the extent necessary to explain the facts of [his] opinions" regarding industry standards as they relate to the reasonableness issues. *Id.* However, the Court cautions Plaintiff against any implication that a violation of the Act or Regulation on its own entitles Plaintiff to relief, and Defendant is free to object if such an implication arises

at trial.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Preclude Opinions and Statements of Plaintiff's Claims Handling Expert (Doc. 112) and the related Joint Notice (Doc. 150) are **granted in part** and **denied in part** to the extent stated in this Order.

Dated this 1st day of September, 2021.

Honorable Steven P. Logan
United States District Judge